UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| GREGORY BELL, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 13 C 1879 |
| | ) | |
| v. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Gregory Bell has filed a motion seeking reversal or remand of a determination by the Commissioner of Social Security denying him Disability Insurance Benefits ("DIB") (doc. # 13), and the Commissioner has filed a motion to affirm (doc. # 22). For the following reasons, we grant Mr. Bell's motion for remand, and deny the Commissioner's motion to affirm.

### I.

Mr. Bell filed for benefits on March 4, 2010, alleging that he became disabled on June 8, 2007, when he suffered a myocardial infarction (heart attack) days before his fifty-seventh birthday (R. 13, 141, 320). Mr. Bell also has a history of low back pain, and he was diagnosed with acute cervical disc radiculopathy in 2006 (R. 294, 339). He has not worked since his heart attack (R. 32-33). At his hearing before an administrative law judge ("ALJ") on February 7, 2012, Mr. Bell testified that, among other things, he suffers racing heart, tiredness, weakness, dizziness, shortness of breath, and pain and numbness in his hands and neck (R. 36, 40-42). This causes him to fall and drops things so he does not lift, stand, or walk much (R. 40, 44-45). Mr.

---

[1]On June 3, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 10, 11).

Bell testified that his mother does the majority of work around the house, and he spends the majority of his time in bed (R. 17).

On March 19, 2012, the ALJ issued a written opinion finding that Mr. Bell was not disabled and denying benefits. The ALJ applied the familiar five-step sequential inquiry for determining disability (R. 13-23). *See* 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ found that Mr. Bell had not engaged in substantial gainful employment since June 8, 2007 (R. 15). At Step 2, she found that Mr. Bell suffered from two severe impairments, "status post myocardial infarction" and "degenerative disc disease," but that Mr. Bell's impairments did not meet or medically equal a listed impairment under Step 3 (R. 15-16). After discussing a portion of Mr. Bell's medical records from 2007 to 2011, the ALJ determined that Mr. Bell had an RFC to perform medium work, "except that he can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch, and crawl; can frequently reach in all directions, including overhead with the upper extremities; and must avoid concentrated exposure to extreme cold and heat, wetness, and humidity" (R. 17).

In reaching that determination, the ALJ noted the results of some stress tests, echocardiograms, electrocardiograms and MRIs taken between 2007 and 2011, and then briefly described some of Mr. Bell's visits to his treating physician, Dr. Mahendra Patel, whom he began seeing before 2007, and continued visiting through 2011 (R. 18). After Mr. Bell suffered his heart attack, Dr. Patel initially restricted him from all work temporarily, and then repeatedly extended his work restrictions (*see, e.g.*, R. 521-25, 401). In 2008 and 2009, Dr. Patel opined that Mr. Bell was "totally disabled," finding that the most he could do during that period was sit for two hours and stand for one hour (*see* R. 402-06, 568). During that period and extending through 2010, Mr. Bell regularly complained of chest pain, severe (sometimes "excruciating")

2

neck pain that radiated to his upper extremities, headaches, dizziness, weakness, numbness and fatigue (R. 442-66). Dr. Patel gave him regular injections of Depo-Medrol with Xylocaine as well as oral steroids to address his pain, which Dr. Patel described as stemming from acute and chronic cervical (neck) radiculopathy (disease of the spinal nerve roots) and peripheral neuropathy (pain, weakness, and numbness caused by nerve damage) (R. 442-66).

Dr. Patel reported that Mr. Bell repeatedly refused to see a cardiologist and have an angiogram done to evaluate him for coronary artery disease. However, the record shows (and the ALJ noted) that Mr. Bell visited a cardiologist, Dr. Tahir Abbasi, first in December 2007, and then several times in each of the following years through 2011 (R. 18). Dr. Abbasi opined that Mr. Bell suffered recurrent symptoms, including dizziness, shortness of breath, numbness, palpitations, fatigue and chest pain, that would prevent him from returning to his prior work as a CTA bus driver and from doing any other physical work (*see, e.g.*, R. 423-38, 515).

The ALJ also reviewed the results of independent examinations performed by cardiologists Roderick Childers (in September 2009) and Stuart Greenfield (in May 2011) (R. 19). As the ALJ explained, Mr. Bell told Dr. Childers that he suffered chest pain and tightness, fatigue, dizziness and shortness of breath with palpitations (R. 19, 408-09). Dr. Childers opined that Mr. Bell's continued episodes of chest pain on moderate exertion would limit him to sedentary work as long as those symptoms continued (R. 19, 412-13). By contrast, Dr. Greenfield opined that despite Mr. Bell's reports of continuing chest pain, he could return to work with no restriction from a "cardiac viewpoint" (R. 19-20, 570-72).

The ALJ next reported the results of the internal medicine consultative examination that internist M. S. Patil performed on behalf of the Bureau of Disability Determination Services in June 2010, and the opinions of two non-examining state agency physicians (R. 19-20). During

3

Dr. Patil's forty minute examination, Mr. Bell complained of constant neck pain (rated at a six or seven out of ten) which radiated to other parts of his body, but Dr. Patil found normal range of motion and no other abnormalities (R. 304-06). On June 22, 2010, a state agency medical consultant, Virgilio Pilapil, M.D., reviewed Dr. Patil's report and the June 2007 emergency room records (Mr. Bell's "treating source statements" were not included in the file Dr. Pilapil reviewed) and determined that Mr. Bell could perform medium work (R. 20, 309-10, 314-15). State agency medical consultant Vidya Madala, M.D., affirmed Dr. Pilapil's findings (R. 318).

After reciting this record evidence, the ALJ assigned the following weight to the medical opinions: (1) "great weight" to the opinions of the State agency medical consultants; (2) "little weight" to Dr. Abbasi's opinions; (3) "little weight" to Dr. Patel's opinions; (4) "no weight" to Dr. Childers' opinion; and (5) "some weight" to Dr. Greenfield's opinion (R. 21). The ALJ also found Mr. Bell's statements concerning the intensity, persistence and limiting effects of his symptoms "not fully credible" because despite his testimony that he was severely limited, his treatment had been "routine and conservative" and he was non-compliant in that he delayed seeing a cardiologist and continued to smoke (R. 20). In light of the above, the ALJ determined that Mr. Bell was incapable of performing his past relevant work, but that he could perform other jobs existing in significant numbers in the national economy (R. 22).

## II.

"We review the ALJ's decision deferentially only to determine if it is supported by substantial evidence, which we have described as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, -- F.3d --, No. 13 C 2964, 2014 WL 3362455, at *5 (7th Cir. July 10, 2014) (internal citations and quotations omitted). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ,

4

we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review. A decision that lacks adequate discussion of the issues will be remanded." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (internal citations omitted).

Mr. Bell contends that the ALJ erred by improperly rejecting the opinions of his treating physicians and improperly assessing his credibility (doc. # 14: Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 7). Additionally, Mr. Bell moves for reversal on the grounds that the Appeals Council improperly rejected his request for review (*Id.*). For the reasons that follow, we find that the ALJ did not properly assess the opinions of Mr. Bell's treating physicians, and we grant Mr. Bell's motion for remand on that basis without reaching Mr. Bell's other challenges.

### III.

Although the ALJ did not explicitly refer to Drs. Patel and Abbasi as treating physicians, the Commissioner does not dispute that they were, indeed, Dr. Bell's treating physicians (doc. # 23: Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 3). An ALJ must give controlling weight to the medical opinions of treating physicians if their opinions are "supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). In deciding what weight to give the treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(c), which include the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support for the physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "When an ALJ chooses

5

to reject a treating physician's opinion, she must provide a sound explanation for the rejection." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

## A.

The ALJ's first mistake was ignoring the nature of Mr. Bell's treatment relationship with Drs. Patel and Abbasi (Def.'s Mem. at 3). As explained above, 20 C.F.R. § 404.1527(c) requires the ALJ to consider the length, nature, and extent of a physician's treatment relationship with the claimant as well as the frequency of examination. The Commissioner concedes that the ALJ did not "explicitly" acknowledge that Drs. Patel and Abbasi were treaters, but argues that the ALJ nonetheless "implicitly" considered the required factors (*Id.*).[2] We disagree, and, for the reasons explained below, find that the ALJ's decision to summarily assign "little weight" to Mr. Bell's treating physicians' opinions lacks sufficient explanation.

### 1.

The ALJ explained that she gave "little weight" to Dr. Abbasi's opinions because his August 2008 opinion that Mr. Bell could not sustain full-time work was "not supported by the medical records," and his September 2011 assessment that Mr. Bell could not work as a bus driver was "consistent with [the ALJ's] Step-5 decision" (R. 21). The ALJ also noted that "a finding of disability is reserved to the Commissioner" (*Id.*).

With this cursory explanation, the ALJ erroneously failed to give any weight to the fact that Dr. Abbasi was a cardiologist, a specialist in his field. *See* 20 C.F.R. § 404.1527(c)(5) (ALJs should "generally give more weight to the opinion of a specialist about medical issues

---

[2]The government's attempt to find an "implicit" explanation for the ALJ's decision strikes us as the type of "impermissible post hoc rationale" that the Seventh Circuit has repeatedly warned against. *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). "*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself," and the government's reliance on reasons not articulated by the ALJ violates this doctrine. *Hanson v. Colvin*, No. 13 C 3473, 2014 WL 3732910, at *3 (7th Cir. July 15, 2014) (internal citations and quotations omitted).

6

related to his or her area of specialty than to the opinion of a source who is not a specialist"). In addition, the ALJ ignored almost all the visits Mr. Bell made to Dr. Abbasi between August 2008 and September 2011, which documented Mr. Bell's consistent complaints of chest pain and tightness, shortness of breath, fatigue, dizziness, numbness and palpitations, as well as Dr. Abbasi's prescriptions for various medications, including nitroglycerin for chest pain, carvedilol for heart failure, and aspirin for heart disease (*see* R. 427-37, 862, 989). The ALJ engaged in "precisely the type of cherry-picking of the medical record that [the Seventh Circuit] ha[s] repeatedly forbidden." *Yurt*, 2014 WL 3362455, at *8. "An ALJ cannot rely only on the evidence that supports her opinion. And while an ALJ need not mention every piece of evidence in her opinion, she cannot ignore a line of evidence that suggests a disability." *Bates*, 736 F.3d at 1099 (internal citations omitted); *see also Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (same).

The ALJ did note that on February 5, 2011, Dr. Abbasi found that Mr. Bell could not perform physical work after he complained of shortness of breath and chest pain (R. 18). However, the ALJ dismissed all of Dr. Abbasi's opinions without assessing their credibility because, the ALJ stated, "a finding of disability is reserved to the Commissioner" (R. 21). This statement, while true, did not give the ALJ license to discount Dr. Abbasi's opinions about the conditions that Mr. Bell suffered that could render him disabled (R. 402, 434, 429, 515, 607-08). "[I]t is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Because she ignored much of the evidence related to

7

Mr. Bell's cardiac impairment, the ALJ's decision to give little weight to Dr. Abbasi's opinions cannot stand.

2.

The ALJ's treatment of Dr. Patel's opinions was similarly deficient. The ALJ stated that she gave Dr. Patel's opinion "little weight" because he had opined in 2007 that Mr. Bell's work restrictions would be temporary, but later concluded that Mr. Bell was "totally disabled" in 2011 (R. 21). The ALJ explained that "Dr. Patel's opinion is not supported by the objective evidence of record" because "the medical records do not show that the claimant's condition has worsened since his alleged onset date of disability" (*Id.*).

This conclusion fails to account for a substantial body of evidence showing that between 2007 and 2011, Mr. Bell consistently complained to Dr. Patel of severe neck and back pain and numbness and weakness in his upper extremities, as well as shortness of breath, headaches, dizziness and chest pain. By 2008 and 2009, Dr. Patel opined that Mr. Bell's condition precluded him from sitting more than two hours or standing more than one hour (R. 402-06). Moreover, the ALJ overlooked the fact that Dr. Patel regularly gave Mr. Bell steroid injections and other medication to try to address Mr. Bell's complaints of severe pain. "Once again, the ALJ did not explain h[er] reason for apparently disregarding or rejecting this evidence." *Sambrooks v. Colvin*, -- F. App'x --, No. 13 C 2529, 2014 WL 2700119, at *5 (7th Cir. June 16, 2014). As explained above, "the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (internal citations omitted).

8

It was also error for the ALJ to ignore Dr. Patel's opinions that Mr. Bell was too disabled to work. *See Garcia*, 741 F.3d at 760. Since 2007, Dr. Patel repeatedly renewed Mr. Bell's work restrictions, eventually opining that his impairments prevented him from working completely. In combination with the other evidence from Dr. Patel that the ALJ disregarded, this medical evidence was relevant to Mr. Bell's physical ability to work full time in a medium exertion job. Because the ALJ ignored this line of evidence from Dr. Patel, her decision to give little weight to Dr. Patel's opinions was not supported by substantial evidence.

## B.

In addition, the ALJ failed to adequately explain why she accorded the opinions of the state agency medical consultants "great weight." The ALJ summarily stated that "there is a reasonable basis for these opinions in the record" (R. 21). But, the ALJ's opinion does not disclose what she considered that "reasonable basis" to be. The ALJ's "conclusory statement" is similar to that which the Seventh Circuit recently found insufficient in *Beardsley v. Colvin*, where the ALJ had found the non-examining physician's opinion more persuasive because it was "consistent with the record as a whole." *Beardsley v. Colvin*, -- F.3d --, No. 13 C 3609, 2014 WL 3361073, at *5 (7th Cir. July 10, 2014).

What's more, the ALJ's decision to assign great weight to the state agency physicians without explanation cannot be dismissed as harmless. The non-examining physicians determined Mr. Bell's RFC upon reviewing Dr. Patil's findings, which were based on a one-time, forty-minute internal medicine examination, without considering any of the reports of Mr. Bell's treating physicians, many of which undermine the state agency opinions.[3]

---

[3] The ALJ also failed to adequately explain her reasons for assigning certain weight to the opinions of the independent medical examiners, Dr. Childers and Dr. Greenfield. After reviewing the results of Dr. Childers' medical examination and his subsequent conclusions (R. 19), the ALJ summarily stated that she gave "no weight" to Dr. Childers' opinion because it was "internally inconsistent and equivocal" (R. 21). Likewise,

9

## CONCLUSION

For the reasons set forth above, we grant Mr. Bell's request for remand (doc. # 13), and deny the Commissioner's motion to affirm (doc. # 22). This case is remanded for further proceedings consistent with this ruling.

ENTER:

*[signature]*

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:** August 12, 2014

---

after reviewing Dr. Greenfield's findings (R. 19), the ALJ offered the conclusory statement that his opinions deserved "some weight" because "the medical evidence shows that the claimant is more limited than was determined by Dr. Greenfield" (R. 21). Nowhere does the ALJ build a logical bridge from the evidence reviewed to her conclusions, and thus her opinion does not allow us to meaningfully review her findings. *See Moore*, 743 F.3d at 1120-21.